UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| BENJAMIN J. CARDOZA, <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, <br><br> Defendant. | CAUSE NO.: 1:20-CV-332-TLS-SLC |

**OPINION AND ORDER**

The Plaintiff Benjamin J. Cardoza seeks review of the final decision of the Commissioner of the Social Security Administration denying his application for supplemental security income. For the reasons set forth below, the Court finds that substantial evidence supports the ALJ's decision and that there is no basis for remand.

**PROCEDURAL BACKGROUND**

The Plaintiff filed an application for supplemental security income on September 18, 2017, alleging disability beginning on January 24, 2012. AR 15, 190, ECF No. 15. The claim was denied initially and on reconsideration, and the Plaintiff requested a hearing, which was held before the ALJ on July 31, 2019. *Id*. at 15, 34. On October 18, 2019, the ALJ issued a written decision and found the Plaintiff not disabled. *Id.* at 15–28. The Appeals Council denied review. *Id.* at 1–3. Thus, the ALJ's decision is the final decision of the Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). On September 22, 2020, the Plaintiff filed his Complaint [ECF No. 1] under 42 U.S.C. § 405(g), seeking reversal of the Commissioner's final decision. This appeal is fully briefed. *See* ECF Nos. 19, 20, 23.

**THE ALJ'S DECISION**

For purposes of supplemental security income, a claimant is "disabled . . . if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a). To be found disabled, a claimant must have a severe physical or mental impairment that prevents him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a). An ALJ conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 416.920.

The first step is to determine whether the claimant is no longer engaged in substantial gainful activity. *Id.* § 416.920(a)(4)(i), (b). In this case, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since September 18, 2017, the application date. AR 17. At step two, the ALJ determines whether the claimant has a "severe impairment." 20 C.F.R. § 416.920(a)(4)(ii), (c). Here, the ALJ determined that the Plaintiff has the severe impairments of anxiety/social phobia, depression, and attention deficit hyperactivity disorder. AR 18.

Step three requires the ALJ to consider whether the claimant's impairment(s) "meets or equals one of [the] listings in appendix 1 to subpart P of part 404 of this chapter." 20 C.F.R. § 416.920(a)(4)(iii), (d). If a claimant's impairment(s), considered singly or in combination with other impairments, meets or equals a listed impairment, the claimant will be found disabled without considering age, education, and work experience. *Id*. § 416.920(a)(4)(iii), (d). Here, the ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing. AR 18.

When a claimant's impairment(s) does not meet or equal a listing, the ALJ determines the claimant's "residual functional capacity" (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see also* 20 C.F.R. § 416.920(e). In this case, the ALJ assessed the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: can perform simple, routine, and repetitive tasks with no production rate pace like assembly-line work with only simple work-related decision-making; can maintain attention and concentration for two-hour segments; could respond appropriately to routine, predictable changes in the workplace; could have occasional interactions with supervisors apart from what is necessary for general instruction, task completion, or training; could have occasional interaction with coworkers, but could not perform tandem tasks; could not have interaction with the general public; can have no work involving traveling to unfamiliar places or using public transportation; and, must avoid work in very loud environments.

AR 20.

The ALJ then moves to step four and determines whether the claimant can do his past relevant work in light of the RFC. 20 C.F.R. § 416.920(a)(4)(iv), (f). In this case, the ALJ found that the Plaintiff is unable to perform any past relevant work under 20 C.F.R. § 416.965. AR 26.

If the claimant is unable to perform past relevant work, the ALJ considers at step five whether the claimant can "make an adjustment to other work" given the RFC and the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v), (g). Here, the ALJ found that the Plaintiff is not disabled because he can perform significant jobs in the national economy of housekeeping cleaner, laundry sorter, and small products assembler. AR 27. The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001); *see also* 20 C.F.R. § 416.912.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard and the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a "critical review of the evidence," and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539 (citations omitted); *see also Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014) ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (internal citations omitted). However, "if the Commissioner

commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

## ANALYSIS

The Plaintiff was diagnosed with social anxiety disorder and post-traumatic stress disorder, and his treating physician remarked that the Plaintiff also suffers from social paranoia, anxiety, and depression. AR 362. In this appeal, the Plaintiff argues that the ALJ erred in formulating the RFC by failing to consider moderate social and concentration-related limitations indicated by the state agency reviewing psychologists in the "checkbox" section of the residual functional capacity forms and by failing to consider the ALJ's own finding of moderate limitations in concentration. The Court finds that the ALJ specifically accounted for the Plaintiff's moderate social and concentration-related impairments that are supported by the evidence of record and that the Plaintiff has failed to demonstrate the record supports a more restrictive RFC.

The RFC (residual functional capacity) is a measure of what an individual can do despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000–01 (7th Cir. 2004); 20 C.F.R. § 416.945(a)(1). The "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The relevant evidence of the individual's ability to do work-related activities includes medical history; medical signs and laboratory findings; the effects of treatment; reports of daily activities; lay evidence; recorded observations; medical source statements; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work;

5

need for a structured living environment; and work evaluations, if available. *Id*. at *5. The determination of a claimant's RFC is a legal decision rather than a medical one. *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)).

As an initial matter, as set forth in detail by the Commissioner in her response brief, the ALJ provided a thorough and detailed analysis of the Plaintiff's treatment records, his supervisor's work activity report from his job at Meijer, his subjective allegations, and each of the medical opinions. The Plaintiff does not raise any objection to the ALJ's analysis of or findings in relation to this evidence of record. Rather, the Plaintiff argues that the ALJ should have specifically discussed four of the check-box answers given by the state agency reviewing psychologists on the mental residual functional capacity form and should have incorporated limitations based on those checkboxes and the ALJ's own finding of moderate limitations in concentration. The Court first considers the RFC for the Plaintiff's social limitations and then considers the RFC for his limitations in concentration, persistence, and pace.

**A.     Social Limitations**

The ALJ gave the following RFC related to the Plaintiff's social limitations: "occasional interactions with supervisors apart from what is necessary for general instruction, task completion, or training," "occasional interaction with coworkers, but could not perform tandem tasks," and "could not have interaction with the general public." AR 20. The Plaintiff argues that the ALJ erred by not incorporating more restrictive social limitations in the RFC and, by extension, in the hypothetical to the vocational expert. *See Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015) ("[B]oth the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." (quoting *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014))). He contends that greater limitations are supported by both a moderate limitation found in the "checkbox" section of the state agency reviewing

psychologists' opinions and the limitation to "brief" interactions with supervisors and coworkers in the state agency reviewing psychologist's narrative explanation on reconsideration. The Court considers each of the Plaintiff's argument in turn.

First, the Plaintiff argues that the ALJ failed to discuss a "checkbox" finding in the state agency reviewing psychologists' opinions that the Plaintiff is "moderately limited" in the ability to "get along with coworkers or peers without distracting them or exhibiting behavioral extremes," despite the ALJ finding the opinions "persuasive." *See* AR 26, 92, 105. The Plaintiff reasons that the hypothetical to the vocational expert did not include this specific moderate limitation and that the ALJ failed to offer a good explanation for not including this limitation, which the Plaintiff contends could have potentially led to a finding of disability. In support, the Plaintiff cites *DeCamp v. Berryhill*, 916 F.3d 671, 675 (7th Cir. 2019), in which the Seventh Circuit Court of Appeals remanded the case because the ALJ failed to include specific moderate difficulties in concentration from the checkbox section of the doctors' opinions that were not included in the doctors' narrative explanations.

Here, in contrast with *DeCamp*, the state agency reviewing psychologist on reconsideration incorporated that checkbox finding of a moderate limitation in the ability to "get along with coworkers or peers without distracting them or exhibiting behavioral extremes" into the narrative explanation that the Plaintiff "could respond appropriately to brief supervision and interactions with coworkers and work situations." AR 105–06; *see also* AR 92. It was appropriate for the ALJ to rely on that narrative explanation. *See Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002) (recognizing that the state agency psychologist indicated "moderate limitations" but translated those findings into an RFC assessment for low-stress, repetitive work on which the ALJ reasonably relied). As noted by the Commissioner, the Seventh Circuit has recently acknowledged that, in such a situation where the narrative "adequately encapsulates and

7

translates those worksheet observations," the "checkbox" or "worksheet observations" are "perhaps less useful to an ALJ that a doctor's narrative RFC assessment." *Varga*, 794 F.3d at 816; *see also Capman v. Colvin*, 617 F. App'x 575, 579 (7th Cir. 2019) ("[T]he ALJ may reasonably rely on the examiner's narrative in Section III, at least where it is not inconsistent with the findings in the Section I worksheet."). The Plaintiff has not shown that the narrative explanation did not sufficiently incorporate the more specific moderate limitation.

Moreover, the ALJ's RFC discussion found the Plaintiff's employer's report to be the "most persuasive," noting that the team leader observed that the Plaintiff got along well with others, he took criticism very well, and, although he was slow, he maintained the work routine. *See* AR 25, 230–32. The Plaintiff argues that, in that same work report, the supervisor commented that the Plaintiff "gets very nervous when others are around" and "keeps to himself." Pl. Br. 15, ECF No. 19 (citing AR 231). However, the ALJ specifically considered those separate aspects of the report. First, the ALJ explained that, "although the claimant became very nervous when others were around, he was able to contact a team leader when someone asked him a question." AR 25 (referencing the team leader's full response at AR 231). Second, the ALJ considered the Plaintiff keeping to himself in the broader context offered by the team leader: "While it was noted that the claimant stayed to himself on breaks, the claimant got along with others on the team, and it was confirmed that 'he takes criticism very well,' but that he 'pulls into himself.'" *Id.* (citing AR 231). The Plaintiff also notes the team leader's statements that the Plaintiff "maintains work routine but is slower than the job requires" and that he "does not finish the load but he is only working 6 hrs per day." Pl. Br. 16 (citing AR 231). In her decision, the ALJ understood this to mean that the work was not finished *because* the Plaintiff was working a shorter day. *Id.* (citing AR 231). The Plaintiff does not contest the ALJ's analysis.

The Plaintiff further notes other portions of the record that support limitations in social interaction. Again, the ALJ considered all the cited records, and the Plaintiff has not shown that the ALJ erred in evaluating the evidence or that the records require greater social limitations than already provided by in the RFC. The Plaintiff notes that his treating psychologist, Dr. Sutton, observed "psychological disassociation" in an April 12, 2018 letter. Pl. Br. 16 (citing AR 395). The ALJ considered that letter in detail, recognizing that "Dr. Sutton discussed the effects of social anxiety" but noting that the team leader's report from the Plaintiff's job reflected the Plaintiff's ability to nevertheless work. AR 24. The Plaintiff also points to the consultative examiner's observation that the Plaintiff "may struggle to get along with his supervisors and coworkers due to his mental health issues" Pl. Br. 16 (citing AR 374). The ALJ specifically quoted that opinion and found it persuasive. AR 24. And, as a result, the ALJ included the limitation to no more than occasional interaction with supervisors and coworkers. Finally, the Plaintiff points to aspects of the findings from the MCM-III evaluation he took. Pl. Br. 16 (citing AR 390). However, the ALJ specifically found the results of the MCM-III assessment unpersuasive, unsupported, and inconsistent with the record as a whole, AR 24, and the Plaintiff does not acknowledge or challenge that finding. Here, the fact that the ALJ did not specifically discuss the moderate "checkbox" limitation does not require remand because the RFC and the hypothetical to the vocational expert incorporated the Plaintiff's moderate social limitations supported by the evidence of record.

Second, the Plaintiff argues that the state agency reviewing psychologist's narrative explanation that the Plaintiff is capable of "brief" interactions with supervisors and coworkers is inconsistent with the ALJ's RFC finding that the Plaintiff can perform work requiring "occasional" interaction with supervisors and coworkers. *Compare* AR 20, *with* AR 105–06. The Plaintiff reasons that the term "occasionally" is defined within Social Security Ruling 83-10 as

9

meaning "up to one-third of the time," SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983), and that "brief" as that term is commonly used cannot be understood to mean more than the two hours in an eight-hour workday contemplated by SSR 83-10.

However, since the parties submitted the briefing on this appeal, the Seventh Circuit addressed and rejected a similar argument in *Reynolds v. Kijakazi*, 25 F.4th 470, 472–74 (7th Cir. 2022), in which the plaintiff argued that a limitation to "brief" interactions was the equivalent of a qualitative limitation to "superficial" interaction. The court found that the consultant's narrative explanation that the plaintiff can "respond appropriately to brief supervision" did not include such a qualitative limitation and—relevant here—that no medical evidence indicated greater limitations than the "occasional interaction" contained in the RFC. *Id*. at 474. The court distinguished the definition of "occasional" in the Dictionary of Occupational Titles—defined as meaning up to one-third of the workday—"because the DOT definition does not refer to interactions with others; instead, it refers to the frequency with which an employee would have to exert various amounts of physical force." *Id*. Similarly, the definition of "occasionally" in Social Security Ruling 83-10 is provided in the context of the exertional demands of strength activities (siting, standing, walking, lifting, carrying, pushing, and pulling) throughout a workday. *See* SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983); *Celina K. v. Kijakazi*, No. 1:21-CV-205, 2022 WL 4462419, at *6 (S.D. Ind. Sept. 23, 2022) (citing *Aaron S. v. Kijakazi*, No. 4:21-CV-14, 2022 WL 2680170, at *8 (S.D. Ind. July 12, 2022)).

Although the Plaintiff in this case is not arguing that the ALJ failed to include a qualitative limitation (e.g. "superficial" interaction) in the RFC, the Plaintiff is nevertheless asserting that the ability to engage in "brief" interaction is incompatible with the RFC for "occasional" interaction. Here, like in *Reynolds* where the opinion evidence found the plaintiff could handle "brief supervision and interactions [with] coworkers" and the court found no

evidence indicating a greater limitation than the "occasional interaction" contained in the RFC, the Plaintiff has not identified any evidence that he would be unable to interact with supervisors or coworkers occasionally as provided in the RFC. *See Reynolds*, 25 F.4th at 474 (finding that, other than the DOT definition of "occasional," the plaintiff "cite[d] no other support for the notion that the ALJ's RFC would require her to interact with supervisors and coworkers for up to two hours and forty minutes per day"). Again, the ALJ relied on the Plaintiff's team leader's observation that he got along well with others, he took criticism very well, and, although he was slow, he maintained the work routine.

In addition, as the Commissioner notes in her response brief, for each of the jobs the ALJ found that the Plaintiff could perform at step five of the sequential analysis, the Dictionary of Occupational Titles provides that interaction with people is "not significant." AR 27; *see Cleaner, Housekeeping* (323.687-014), 1991 WL 672783; *Laundry Sorter* (361.687-014), 1991 WL 672991; *Assembler, Small Products* (706.684-022), 1991 WL 679050. The Plaintiff offers no reply to the citation to these job descriptions. The Plaintiff also ignores the ALJ's explanation that she included more social restrictions that provided in the state agency reviewing psychologists' narrative explanation to address the Plaintiff's difficulty interacting with others by further precluding tandem tasks with coworkers, travel to unfamiliar places, and the use of public transportation. *See* AR 26.

Therefore, the Court finds that, on this record, the Plaintiff has not shown that the ALJ erred in finding he could occasionally interact with supervisors and coworkers and that the RFC is supported by substantial evidence.

**B.     Moderate Limitation in Concentration, Persistence, and Pace**

The Seventh Circuit has repeatedly held that "[a]mong the mental limitations the VE must consider are deficiencies in concentration, persistence, or pace." *Varga*, 794 F.3d at 813

(citing *Yurt*, 758 F.3d at 857; *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009)); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). In formulating a hypothetical to the vocational expert for these deficiencies, "there is no magic words requirement." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). Nevertheless, "the ALJ must account for the 'totality of a claimant's limitations' in determining the proper RFC." *Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020) (quoting *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018)). Thus, "both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Winsted v. Berryhill*, 923 F.3d 472, 476 (7th Cir. 2019) (citing *Varga*, 794 F.3d at 813); *see Crump*, 932 F.3d at 570 (citing *Moreno*, 882 F.3d at 730).

Here, in relation to the Plaintiff's limitations in concentration, persistence, and pace, the ALJ found that the Plaintiff has the RFC (1) to "perform simple, routine, and repetitive tasks with no production rate pace like assembly-line work," "only simple work-related decision-making," and no "tandem tasks," (2) "maintain attention and concentration for two-hour segments," and (3) "respond appropriately to routine, predictable changes in the workplace." AR 20. The ALJ then included each of those limitations (as well as all other aspects of the RFC) in the hypothetical to the vocational expert. AR 55.

The Plaintiff argues that the ALJ erred by not incorporating more restrictive limitations as to concentration, persistence, and pace in the RFC, and as a consequence, in the hypothetical to the vocational expert. As with the social limitations, the Plaintiff first argues that the ALJ failed to discuss and incorporate specific moderate limitations from the "checkbox" portion of the state agency reviewing psychologists' opinions. The Plaintiff specifically notes the checkbox findings that he is "moderately" limited in the "concentration and persistence" areas of the ability (1) to "work in coordination with or in proximity to others without being distracted by them" and

12

(2) to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" as well as in the "adaptation" area of the ability (3) to "respond appropriately to changes in the work setting." *See* AR 91–92, 104–105.

The Plaintiff contends that these checkbox opinions are "suggestive" of some time off task or of breaks in concentration and faults the ALJ for not specifically discussing these checkbox opinions and for not including any limitations for time off or breaks in concentration in the RFC or in the hypothetical to the vocational expert. As noted above, the Plaintiff cites *DeCamp*, 916 F.3d 671, in which the ALJ failed to include specific moderate difficulties in concentration from the checkbox section of the doctors' opinions that were not included in the doctors' narrative explanations. The court in *DeCamp* specifically relied on the line of cases that "repeatedly rejected the notion that a hypothetical . . . confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *Id.* at 676 (citing cases).

However, the Plaintiff fails to acknowledge the ALJ's specific discussion of the Plaintiff's concentration difficulties based on his anxiety and the ALJ's explanation for how the limitations are accommodated in the RFC:

> The claimant's residual functional capacity, overall, provides for a limited range of workplace challenges, given social anxiety and effects of depression and ADHD. It defines simple, unskilled work tasks that would reduce workplace stress and that would accommodate any deficits in terms of concentration, persistence, and carrying out work tasks due to distraction and/or the effects of anxiety, and it provides for only routine and predictable changes to accommodate any difficulties in adapting to more frequent workplace changes. These limits, and in defining simple, repetitive tasks and the ability to concentrate for two-hour segments, also recognize hearing allegations of difficulty with multi-step tasks and working for extended periods of time.

AR 26. In other words, the ALJ recognized that the Plaintiff's anxiety leads to workplace stress that in turn leads to difficulties in concentration, persistence, and pace. Thus, the RFC for "simple, routine, and repetitive tasks" specifically accommodates the Plaintiff's limitations. *See Martin*, 950 F.3d at 373–74 (discussing *Crump*, 932 F.3d at 570; *Winsted*, 923 F.3d at 477; *DeCamp*, 916 F.3d at 675–76; *Moreno*, 882 F.3d at 730; *Varga*, 794 F.3d at 814)); *Recha v. Saul*, 843 F. App'x 1, *4–5 (7th Cir. 2021) (finding that the ALJ's decision limiting the plaintiff to simple, routine, repetitive work with only simple changes in his daily work routine was supported by substantial evidence (citing *Martin*, 950 F.3d at 374; *Moreno*, 882 F.3d at 730)).

This correlation between the Plaintiff's anxiety, stress, and concentration is supported by the record evidence that the ALJ discussed in detail. For example, the consultative examiner found that the Plaintiff's "ability to sustain his concentration and persistence appeared to be unimpaired." AR 19 (citing AR 372), 23 (citing AR 372). Similarly, the consultative examiner's medical source statement provides: "Mr. Cardoza's ability to sustain his concentration and persistence appeared to be unimpaired. He would likely have very few, if any, problems being able to concentrate and persist on his job responsibilities." AR 19 (citing AR 374), 24 (citing AR 374). At a visit for medication and evaluation of anxiety on July 9, 2019, Dr. Greiner rated the Plaintiff's "Attention/Concentration" as "Below Average." AR 19 (citing AR 526), 23 (citing AR 526). However, the ALJ discussed this finding and emphasized that Dr. Greiner did not check the box for "Problem Exist" after "Attention/Concentration." AR 19 (citing AR 526 (offering three check boxes: "Normal," "Below Average," and "Problem Exist")). Importantly, the Plaintiff testified about his anxiety being the cause of his difficulties concentrating. AR 21 (citing AR 43). The ALJ also found most persuasive the Plaintiff's employer's observations that he got along well with others, he needed minimal instruction to complete tasks, he took criticism

very well, his attendance was average, and, although he was slow, he maintained the work routine. *See* AR 25 (citing AR 230–32).

The Plaintiff recognizes that the ALJ explained she was accounting for "off-task" time by limiting the Plaintiff to the ability to maintain attention and concentration for two-hour periods of time. Yet, the Plaintiff contends that such a limitation is commensurate with an employee who has *no* limitations in maintaining concentration, persistence, or pace, citing the vocational expert's testimony. Pl. Br. 19. However, the vocational expert testified that work would be precluded for a person who is unable to work in the regular two-hour block of time *without* reminders from a boss to consistently redirect the worker. AR 58. There is no such evidence that the Plaintiff would need to be redirected consistently. In fact, as discussed by the ALJ, the Plaintiff's team leader wrote that the Plaintiff did not require any supervision in excess of that given to other employees and that he "is able to concentrate on his assignment" and "does not require any instructions after he has been given his job assignment." AR 25, 230, 232.

In a similar vein, the Plaintiff argues that a limitation to "simple, routine, and repetitive tasks" refers to unskilled work, which indicates the amount of time it takes to learn a job rather than how long an individual can sustain concentration. *See Varga*, 794 F.3d at 814–16 (noting that the limitation to "simple, routine, and repetitive tasks" goes to whether work can be learned rather than temperamental deficiencies and limitations in concentration, persistence, or pace); *O'Connor-Spinner*, 627 F.3d at 620. However, in this case, the Plaintiff testified that he is unable to work because he has difficulty "handling multi-step processes and working for extended periods of time," which causes him "a lot of anxiety and a lot of stress." AR 43. The ALJ recognized this testimony and, as discussed above, incorporated limitations tailored to that anxiety. AR 21. Thus, the limitation to simple, routine, and repetitive tasks specifically addresses the source of the Plaintiff's concentration and pace issues. *Compare Martin*, 950 F.3d at 374

(finding that the "ALJ did not take any of the shortcuts on [the plaintiff's concentration, persistence, and pace] limitations that we have found problematic in other cases" and that the ALJ "tailored" the RFC to her specific limitations), *with Winsted*, 923 F.3d at 476–77 (finding that the plaintiff's moderate limitation in concentration, persistence, and pace was not properly incorporated in the RFC or the hypothetical question); *Crump*, 932 F.3d at 570 (recognizing that an "ALJ generally may not rely merely on catch-all terms like 'simple, repetitive tasks' because there is no basis to conclude that they account for problems of concentration, persistence or pace" (quoting *Winsted*, 923 F.3d at 477)); *DeCamp*, 916 F.3d at 675–76 (finding that the limitation to "unskilled work" with no "fast-paced production line or tandem tasks" did not account for the specific limitations raised in the checkbox answers).

Finally, the Plaintiff argues that the ALJ failed to account for the ALJ's own finding of a moderate limitation in concentration, persistence, and pace at steps three and five of the sequential analysis. But as discussed above, the ALJ discussed the extensive record evidence that supports the RFC and built a logical bridge between the evidence and the RFC by explaining how the RFC accommodates the Plaintiff's specific concentration difficulties. *Cf. Winsted*, 923 F.3d at 477; *Crump*, 932 F.3d at 570. Recognizing that anxiety was the cause of the Plaintiff's concentration limitations, the ALJ also included the limitation to "simple work-related decision-making." AR 20, 26. In addition, the ALJ explained that, to "further reduce possible stressors that may occur due to difficulties in interacting with others, the [RFC] preclude[s] traveling to unfamiliar places and use of public transportation" and that "work must be in an environment without very loud noise . . . [to] avoid distraction or noise that may increase stress and/or anxiety." AR 26. Again, the Plaintiff does not challenge the ALJ's assessment of that evidence. *See Jozefyk*, 923 F.3d at 497–98 ("The ALJ also tied the record evidence to the limitations

16

included in the RFC finding, tailoring Jozefyk's workplace setting to accommodate his social anxiety.").

The Court finds that the ALJ's RFC for the Plaintiff's limitations in concentration, persistence, and pace is supported by substantial evidence. Thus, any error by the ALJ in failing to specifically discuss the moderate limitations in the checkbox section is harmless because the RFC accounts for all of the Plaintiff's moderate limitations in concentration, persistence, and pace.

## CONCLUSION

For the reasons stated above, the Court DENIES the relief sought in the Plaintiff's Brief [ECF No. 19] and AFFIRMS the decision of the Commissioner of the Social Security Administration. The Court DIRECTS the Clerk of Court to ENTER JUDGMENT against the Plaintiff Benjamin J. Cardoza and in favor of the Commissioner of Social Security.

SO ORDERED on February 28, 2023.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT